## RIO GRANDE RY. CO. v. GOMILA.

*(Circuit Court, E. D. Louisiana. 1886.)*

1. COURTS—UNITED STATES COURTS AND STATE LAWS—SALE UNDER A FI. FA.—PROBATE.

   Where a person died when a judgment recovered by him in the state courts against certain parties was about to be sold with other property by the marshal under a *fi. fa.* for the benefit of the plaintiff by process of the United States courts, and the plaintiff, after causing the legal representatives of the deceased to be made parties to the suit, was proceeding with the sale, *held,* that the United States court could order the suspension of the sale and the property to·be turned over to the executor, on motion or petition, for administration in the probate court of the state, and a suit in equity or injunction was not necessary.

2. SAME—JURISDICTION OF UNITED STATES COURT—HOW AFFECTED BY STATE LAWS.

   The United States court does not deprive itself of any jurisdictional power by directing that property which has been placed by its order in the hands of the United States marshal for the benefit of a party shall be turned over to the probate court for administration under state laws, preserving whatever right said party may have in law.

Motion for Order to Suspend Proceedings to Sell Land under *Fi. Fa.*

*Geo. L. Bright,* for plaintiff.

*Breaux & Hall,* for defendant.

BOARMAN, J. The plaintiff and defendant are citizens of different states. Judgment was obtained in an action for debt in this court. The plaintiff, in endeavoring, by process of law to collect his claim, has presented several interesting questions of law. Last summer the question whether a judgment which Gomila had obtained against certain parties in the state court could be seized and sold by process of this court being decided affirmatively, the marshal was proceeding under a *fi. fa.* to sell the said judgment and other property of Gomila, when the defendant died. On the death of Gomila plaintiff stayed the sale, and caused his legal representatives to be made parties and was again proceeding to sell the said property, when Wiltz, Gomila's executor, applied, by petition or motion, to this court, for an order directing the suspension of the sale; and he, Wiltz, subsequently asked that the property under seizure be turned over to him for the benefit of the succession, to be administered in the probate courts of the state. These matters are now under consideration. The railway company objects to allowing the relief sought by Wiltz, on two grounds: *First,* that the remedy is not by motion or rule, but by a suit in equity and injunction; *second,* that this court has the right to execute judgments rendered by it, and to sell the said property which was under seizure when Gomila died; that the proceedings in execution should go on after the legal representatives are made parties; that the court, having been seized of jurisdiction over the property, cannot now be divested of that jurisdiction.

The motion or petition filed by the executors shows the death of

Gomila. His death being made known to the court, the law of Louisiana, which this court is now engaged in administering, does or it does not, in consequence of his death pending the seizure by the marshal, require that all the property of which he died possessed should be administered by the agencies of the probate courts. It appears that the law of Louisiana forbids the sale of a deceased person's property under such writs as the marshal is executing. If the property of Gomila cannot now be sold under such writs, this court, like any other court administering this state's laws, is without jurisdiction to have the property sold, and we see no reason why the relief sought by Wiltz cannot be granted on the motion or petition filed by him. A suit in equity and injunction is not necessary. The opinion and reasoning of the court in *Van Norden* v. *Morton*, 99 U. S. 378, we think, supports our view on this point.

Upon the second point the burden of plaintiff's argument is directed mainly to the suggestion that this court, in granting such an order, would be deprived of its jurisdictional power by operation of state laws. On the matter of jurisdiction it should be borne in mind that the federal courts go to the constitution and laws of the United States to ascertain the source and measure of their jurisdiction. Before such power can be said to be in the court, it must appear affirmatively that the constitution authorizes congress to confer the grant, and that provision has been made for the exercise of such a power. It goes without argument that state laws cannot extend or limit the jurisdiction of these courts; and it is equally as clear that if this court has the jurisdictional power to deny or grant the relief sought in the present suit we must be controlled by and enforce the laws of Louisiana.

In the original suit, the one in which the execution writs were issued, the different citizenship of the parties gave the court jurisdiction to try the suit under the laws of the state, and to make its judgment effectual, under the provision of the same laws, against Gomila's property. Those laws should control in all the proceedings growing out of that suit; there are no other laws to apply.

While Gomila was living the suit and all the proceedings to make the judgment effectual were against him; now they are proceedings against his succession, which is under the administration of an executor who, in law, is the trustee for all the creditors of Gomila's succession. His death changes the relations and rights of the creditors to the property, and the law in this case forbids it to be sold under execution. The debt fixed by the judgment against Gomila, if paid at all, must be paid by or out of the succession in accordance with the succession laws of the state. When the railway company began the original suit against Gomila there was no lien privilege or mortgage on defendant's property sought to be enforced; the plaintiff was only an ordinary creditor. This court, in turning the property under seizure over to the executor to be administered under the succession

laws of the state, does not in any way affect his rights under those laws. It is true that those laws impose special privileges on all of the deceased's property, including that in the hands of the marshal, but they are the laws under which his rights were fixed in the original suit, and they will be applied in all the proceedings in this court, in which he seeks to make his judgment effectual. The fact that a federal instead of a state court is trying the case now cannot change or enlarge the remedies or increase the relief sought by either party in the premises. If one of this state's courts should find itself without jurisdiction to sell the property of a deceased person, under writs issued by it to the sheriff, the matter would be given up to the probate court, where such orders as are proper would be issued. In so directing the matter there would be no deprivation of its jurisdictional power; nor can we see any deprivation if jurisdiction of the property which we are forbidden to sell under *fi. fa.* is turned over to a court where a proper disposition can be made of it under the law. Certainly the judgment which the railway company has against Gomila has no higher rank here than it would have in the state court. It will not be questioned that if these proceedings were pending in a state court that the payment of plaintiff's judgment would be postponed until the privilege debts against the succession were paid. If this sale should be made the proceeds thereof would have to be paid over by the marshal to plaintiff in execution. He could do nothing else with the money. Would he, in the face of the laws which impose a number of privileged claims on all the succession property, be warranted in so disposing of the money? If so, the fact that the plaintiff is a suitor in the federal instead of the state court would operate as an avoidance of the succession law of the state and give him a right to collect a judgment which, in the state court, might be defeated by privilege creditors. But the plaintiff's counsel says, let the marshal make the sale, hold the proceeds, and allow creditors with higher privileges to come in by way of third opposition. This would be an easy solution of the matter if the state laws provided for or allowed the property of a deceased person to be sold under such writs.

We cannot see how if we grant this order our jurisdiction is impaired by the laws of the state. We have jurisdiction in this case because of the different citizenship of the parties. The jurisdiction to try a case is one thing. How far relief may be granted to the parties depends upon the state's laws, and does not enter into the question of jurisdiction in the way suggested by plaintiff's counsel. The power to direct that this property shall go from the marshal to the probate court for administration, preserving whatever right the plaintiff may have in law, is an exercise of jurisdictional power. The law directs the court to dispose of the pending matter in that way, and there is nothing in the organism of the court to justify any other action in the premises.

The order is granted as prayed for.